[No. 13325.   Department Two.   December 29, 1916.]

TITLE GUARANTY & SURETY COMPANY, *Appellant*, v. FIRST NATIONAL BANK OF HOQUIAM *et al.*, *Respondents*.[1]

MUNICIPAL CORPORATIONS—PUBLIC WORKS — CONTRACTOR'S BOND— LOANS TO CONTRACTOR—LIABILITY. A surety on a contractor's bond given to secure labor and material claims is not liable to a bank financing the work by loaning money to the contractor, unless it is shown that the money loaned was used in the payment of labor, material, or supplies consumed in the construction of the work.

SAME—ADVANCES TO CONTRACTOR—PREFERRED CLAIMS—RIGHTS OF SURETY. A contractor having, before default, assigned to a bank the sums to grow due on a city contract as collateral security for advances, sums due the contractor to the extent of the eighty-five per cent due as the work progresses are to be first applied to the repayment of the advances, making the bank a preferred claimant to that extent; but the bank has no right to participate in the fifteen per cent reserve, withheld by the city for the protection of laborers and materialmen, as against creditors or the contractor's surety completing the work and discharging claims.

MUNICIPAL CORPORATIONS — STREET IMPROVEMENT — CONTRACTS — BOND OF CONTRACTOR—LIABILITY—SUPPLIES. A bond given by a contractor to secure payment of laborers and materialmen upon public work and all persons who shall furnish the contractor with "provisions and supplies" for the carrying on of said work, in compliance with Rem. & Bal. Code, § 1159, covers sums due for the rental of a donkey engine furnished to the contractor on city street improvement work.

PLEADING—ANSWER—DENIAL. A denial on information and belief of the filing with the city clerk of a claim against a contractor's bond to secure laborers and materialmen is insufficient to present an issue.

Appeal from a judgment of the superior court for Grays Harbor county, Irwin, J., entered September 16, 1915, upon findings in favor of the defendants, in an action to establish claims against a contractor's bond, tried to the court. Reversed as to one defendant; affirmed as to the others.

[1]Reported in 162 Pac. 23.

*James B. Murphy* and *Carl Kincaid,* for appellant.

*C. W. Hodgdon,* for respondent First National Bank of Hoquiam.

*Morgan & Brewer,* for respondent Foster Company.

*Stewart & Tucker,* for respondent Willamette Iron & Steel Works.

MAIN, J.—This action was brought by the plaintiff, as surety upon a contractor's bond, for the purpose of having the claims against the bond, for which the bonding company was legally liable, established in one action, and thus avoid a multiplicity of suits. After the issues were framed, the cause, in due time, was tried to the court without a jury, and resulted in a judgment establishing a number of claims against the bond. The claim of the First National Bank of Hoquiam was allowed in the sum of $1,500; that of F. G. Foster & Company, a corporation, in the sum of $442.75; and that of the Willamette Iron & Steel Works, a corporation, in the sum of $375. From that portion of the judgment which establishes these claims, the appeal is prosecuted. There is here no controversy over the validity of any of the other claims for which judgment was rendered against the bonding company.

The facts are these: On August 19, 1913, the city of Aberdeen contracted with Peter Hunley and Ralph Henry, copartners doing business under the firm name of Hunley & Henry, for the construction of a reservoir. The appellant, Title Guaranty & Surety Company, became surety upon a bond guaranteeing the performance of this contract. Soon after this contract was made, the contractors secured a contract for the construction of a bridge across the Cowlitz river, in Lewis county. The First National Bank of Hoquiam agreed with the contractors to finance the reservoir job, but declined to finance the Cowlitz river bridge job. As security for the money advanced by the bank, the contractors assigned

to it the warrants that they were to receive from the city from time to time.

When the reservoir contract was nearly completed, the contractors ceased work, and the bonding company completed the contract. When the contract was completed, there was a balance due from the city of $2,226.04. The bank claims that, while the contractors were engaged upon the work, they borrowed various sums of money from time to time, aggregating a total of $16,768.86, and that it has received in warrants, which have been applied to the indebtedness, $11,-272.04. The bank claimed a balance due of $1,900, and the claim was allowed to the extent of $1,500, as above stated. While the Cowlitz river bridge was being constructed, checks were drawn upon the account for that job to the extent of approximately $5,000. These checks were paid by the bank without knowledge of the diversion of the funds.

The claim of the bank will first be considered. The trial court found that there was a balance due the bank in the sum of $1,500. The evidence fails to show for what the money furnished by the bank was expended. In other words, it does not show whether it was used for the payment of material, labor, or supplies, or whether it went to pay for those things which were a part of the contractors' equipment. It may be assumed that if the evidence had shown that the money was used for the purpose of paying for material, labor, or supplies, under the holding in *Puget Sound State Bank v. Gallucci*, 82 Wash. 445, 144 Pac. 698, Ann. Cas. 1916A 767, the bank had the right to have its claim established by judgment. Much reliance is placed upon that case by the bank. It was there held that the bank could recover against the surety company for so much of the money loaned to the contractor as could be traced into payments made for labor actually performed upon, and material actually furnished and consumed, in the construction of the improvement. That case was decided upon the broad provisions of the contract there guaranteed by the surety com-

pany. In the absence of a showing by the bank, in this case, that the money which it loaned to the contractors was used in the payment of labor, material, or supplies consumed in the construction of the work, the *Gallucci* case is not applicable, and no recovery can be had under the doctrine of that case.

It remains to inquire what the rights of the bank are under the assignment which it held from the contractors. The contract with the city for the doing of the work provided that, on or before the 10th day of each month, eighty-five per cent of the amount earned under the contract during the preceding month should be paid, and the balance, or fifteen per cent, was to be retained by the city until the completion and acceptance of the work. The amount earned under the contract was $13,498.08. The amount received by the bank, by virtue of the assignment, was $11,272.04. The balance, $2,226.04, was directed to be paid into the registry of the court. The bank, under its assignment, was a preferred claimant to the extent of the balance of the eighty-five per cent fund—the assignment having taken place prior to the default—but had no right to participate in the fifteen per cent by virtue of the assignment, which was to be retained until the work was completed and accepted. The previous decisions of this court upon this question have been reviewed, distinguished, and fully discussed in the recent case of *Northwestern Nat. Bank of Bellingham v. Guardian Casualty & Guaranty Co.*, 93 Wash. 635, 161 Pac. 473, and it is unnecessary to here further discuss the question. Fifteen per cent of $13,498.08, the amount earned under the contract, would be $2,024.71. The amount retained by the city, and which was directed by the court to be paid into the registry thereof, was $2,226.04. The difference between these two sums, or $201.33, would be the amount which the bank was entitled to, this being the portion of the eighty-five per cent fund which was included in the amount paid by the city into the registry of the court.

As to the claim of the Willamette Iron & Steel Works, the only question is whether the rental agreed to be paid by the contractors for the use of a donkey engine, in connection with the performance of the contract, is a claim which may be established against the bond. In the cases of *Hurley-Mason Co. v. American Bonding Co.*, 79 Wash. 564, 140 Pac. 575, and *National Lumber & Box Co. v. Title Guaranty & Surety Co.*, 85 Wash. 660, 149 Pac. 16, it was distinctly held that the rental value of machinery, hired by the contractor for use in carrying on work within the terms of the contract, is recoverable from the bondsman as a supply furnished the contractor. The force of these decisions is recognized by appellant, but comfort is sought to be derived from *United States Rubber Co. v. American Bonding Co.*, 86 Wash. 180, 149 Pac. 706, L. R. A. 1915F 951. In that case, the *Hurley-Mason Co.* and the *National Lumber & Box Co.* cases are referred to, and in no sense overruled. There is nothing in the opinion that would justify the conclusion that it was there intended to modify the doctrine announced in those cases.

As to the claim of F. G. Foster & Company, it appears that, upon the trial, the notice of the claim filed with the clerk was not introduced in evidence, and for this reason the judgment on this item is objected to. The failure to put the claim in evidence is fatal to a recovery, unless under the pleadings it became unnecessary to introduce the claim. The complaint filed by the appellant recites that F. G. Foster & Company, together with others, naming them, have each filed with the city clerk "some writing, by which they attempt to assert a claim against the said bond in the hands of the city treasurer, or against the above-entitled plaintiff, as surety upon said bond." It is further recited that the appellant does not know and is not able to determine whether any of the defendants mentioned in the action, asserting claims against the bond, have a valid claim, and asks that each of the claimants be required to set forth such claims as they have, and, if found meritorious, the amount of each claim

may be determined in one action. F. G. Foster & Company responded to the complaint by answer and cross-complaint. Paragraph seven of the cross-complaint alleges the filing of the claim in the office of the city clerk on December 10, 1914, and sets out a copy of the claim. Answering this cross-complaint, the appellant denies paragraph seven upon information and belief. The question here is whether this was a sufficient denial.

The claim, after it was filed, became a public document. The rule is that the denial of a public record or a public document upon information and belief is insufficient to present an issue. *Sumpter v. Burnham,* 51 Wash. 599, 99 Pac. 752; *Belknap Glass Co. v. Brown,* 69 Wash. 127, 124 Pac. 390; *White v. Jansen,* 81 Wash. 435, 142 Pac. 1140. The holding in those cases is hardly in harmony with the rule of *Cowie v. Ahrenstedt,* 1 Wash. 416, 25 Pac. 458. This earlier case, though not mentioned in any of the three cases cited, is, nevertheless, modified by the holding in those cases to the extent that it is inconsistent therewith. The denial in the present case would not be sufficient even under the rule stated in the *Cowie* case.

As to the First National Bank of Hoquiam, the cause will be remanded with direction to the superior court to enter a judgment for $201.33, payable out of the fund in the registry of the court. As to F. G. Foster & Company, and the Willamette Iron & Steel Works, the judgment will be affirmed.

MORRIS, C. J., ELLIS, CHADWICK, and FULLERTON, JJ., concur.